UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH O'DAY,<br><br>              Plaintiff,<br><br>   v.<br><br>WILKES-BARRE AREA SCHOOL DISTRICT,<br><br>              Defendant. | CIVIL ACTION NO. 3:22-CV-00921<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendant Wilkes-Barre Area School District (the "School District") on September 6, 2022. (Doc. 12). Plaintiff Joseph O'Day ("O'Day") initiated this civil rights action by filing a complaint on June 9, 2022, and an amended complaint on August 25, 2022. (Doc. 1; Doc. 10). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 14). For the following reasons, the School District's motion to dismiss will be denied.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On June 9, 2022, O'Day initiated this action with the filing of a complaint against the School District pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a) and (d). (Doc. 1). On August 11, 2022, the School District filed a motion to dismiss for failure to state a claim. (Doc. 7). In response, O'Day filed the amended complaint on August 25, 2022. (Doc. 10). In the amended complaint, O'Day asserts the following causes of action: Count I – ADA Discrimination on Account of Disability Termination; Count II – PHRA Discrimination on

Account of Disability Termination; Count III – Violation of the ADA Retaliation; Count IV – Violation of the PHRA Retaliation; Count V – Violation of the ADA Failure to Accommodate; and Count VI – Violation of the PHRA Failure to Accommodate. (Doc. 10).

The events giving rise to this action follows. O'Day alleges that he commenced employment with the School District during or about October 2007 as a housekeeper and was then promoted to a custodian on January 14, 2008. (Doc. 10, ¶¶ 13-14). O'Day suffers from arthritis, which necessitated total knee replacement surgery on February 17, 2020, and which caused O'Day significant pain and discomfort and impaired his mobility. (Doc. 10, ¶¶ 16-17). The School District was aware of O'Day's arthritic condition and his total knee replacement surgery. (Doc. 10, ¶ 19). O'Day requested and received medical leave from the School District for his knee surgery and recuperation therefrom. (Doc. 10, ¶ 20).

Following his total knee replacement surgery, O'Day returned to work as a custodian at Kistler Elementary School, where he had been and was assigned the duty of cleaning the kindergarten and first grade pods on the first floor of the building. (Doc. 10, ¶ 24). On or about August 20, 2020, O'Day requested a reasonable accommodation, accompanied by a doctor's note, to take frequent rest breaks and be restricted to light duty until further notice. (Doc. 10, ¶¶ 27-29; Doc. 10, at 27). O'Day maintains that his periodic rest breaks did not interfere with the performance of the essential functions of his job. (Doc. 10, ¶ 26). Shortly after August 20, 2020, O'Day was approached by Kistler Elementary School building principal, Margo Serafini, who questioned O'Day as to why he was sitting down while on duty. (Doc. 10, ¶ 30). After O'Day provided Serafini with the doctor's note, she allegedly instructed O'Day's supervisor, Tim Conway, that O'Day needed to provide Serafini with renewed certifications on a monthly basis of his need for an accommodation and instructed Conway to double

O'Day's workload by requiring him to clean the entire second floor of the Kistler Elementary School building, instead of his current assignment. (Doc. 10, ¶ 33). O'Day secured a re-certification from his doctor on September 11, 2020. (Doc. 10, ¶ 38; Doc. 10, at 28).

On September 2, 2020, O'Day was placed on leave by the School District due to his exposure to a person who had tested positive for the COVID-19 virus. (Doc. 10, ¶ 39). By letter of his counsel dated September 17, 2020, O'Day complaint of disability discrimination and retaliation for requesting reasonable disability accommodations, and requested the accommodation of a transfer to another facility, not under the supervision of Serafini. (Doc. 10, ¶ 43; Doc. 10, at 29). On September 21, 2020, O'Day returned to his job as a custodian at the Kistler Elementary School. (Doc. 10, ¶ 49). On September 23, 2020, the School District issued a Loudermill hearing notice to O'Day, which stated: "Please accept this as a formal write-up for insubordination and failure to complete required job responsibilities." (Doc. 10, ¶ 51). On September 25, 2020, the School District suspended O'Day without pay pending a final determination by the Board. (Doc. 10, ¶ 59). In addition, on September 25, 2021, the School District sent a COBRA coverage notice to O'Day, which indicated that his health insurance would end on September 30, 2020, due to the "[e]nd of employment." (Doc. 10, ¶ 61; Doc. 10, at 81). According to the amended complaint, O'Day alleges that he was constructively discharged and resigned his employment with a retirement date of October 20, 2020. (Doc. 10, ¶ 71). O'Day further claims the School District directly fired him on September 25, 2020. (Doc. 10, ¶ 74).

The motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 12; Doc. 13; Doc. 15).

II. **STANDARD OF LAW**

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347. The Third Circuit has further instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

III.   **DISCUSSION**

The School District moves to dismiss the amended complaint for failure to state a claim upon which relief may be granted under the ADA or PHRA pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. 13). The ADA prohibits employers from "discriminating

---

[1] Generally, the substantive elements of these causes of action are coextensive and therefore subject to the same analytical evaluation. *See, e.g., Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) ("Before turning to the first issue, whether Taylor has a disability under the ADA, we mention that we will only discuss Taylor's ADA claim because our analysis of an ADA claim applies equally to a PHRA claim."); *see also Molyneaux v. Monroe*

'against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.' " *Taylor*, 184 F.3d at 305 (quoting 42 U.S.C. ¶ 12112 (a)). To establish a claim under Title II of the ADA, a plaintiff must show "(1) that he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Dahl v. Johnston*, 598 F. App'x 818, 819–20 (3d Cir. 2015) (citing 42 U.S.C. § 12132); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007). Further, to establish a claim for retaliation, plaintiff must demonstrate "(1) [that he engaged in] protected employee activity; (2) adverse [employment] action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted). A " 'qualified individual' [is] a person 'who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.' " *Gardner v. Sch. Dist. of Philadelphia*, 636 F. App'x 79, 83 (3d Cir. 2015) (quoting 42 U.S.C. § 12111(8)).

An employee seeking relief under the ADA can prove discrimination either through direct evidence of discrimination or circumstantially. Most commonly, cases involving non-direct, i.e., circumstantial, evidence in the ADA context are claims of disparate treatment. *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003) ("The Courts of Appeals have

---

*Cty.*, No. CV 3:17-1865, 2020 WL 94079, at *5 n.3 (M.D. Pa. Jan. 8, 2020). Thus, the Court refers only to the ADA in setting forth the applicable substantive standards.

consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases.").[2] Under the *McDonnell Douglas* framework, "a plaintiff must first establish a *prima facie* case of discrimination," the "burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action," and, "[i]f the employer meets this burden, the presumption of intentional discrimination disappears, but if the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual." *Raytheon*, 540 U.S. at 50. While *McDonnell Douglas* is generally inapplicable in the context of reasonable-accommodation, hostile-work-environment, and constructive-discharge claims, it does control the assessment of a claim for retaliation. *See, e.g.*, *Montgomery v. City of Pittsburgh*, No. CV 16-248, 2017 WL 7940776, at *11 (W.D. Pa. Oct. 3, 2017) (applying to constructive-discharge claim the Third Circuit's reasoning for rejecting the application of *McDonnell Douglas* to hostile-environment claims), *report and recommendation adopted,* No. 2:16CV248, 2018 WL 1141733 (W.D. Pa. Mar. 2, 2018); *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (retaliation).

    A. O'DAY SUFFICIENTLY PLED DISABILITY DISCRIMINATION AND RETALIATION CLAIMS.

Counts I, II, III, and IV of the amended complaint pleads claims of disability discrimination and retaliation claims under the ADA and PHRA, respectively. (Doc. 10, ¶¶ 78-92). Moving to dismiss Counts I, II, III, and IV, the School District challenges whether O'Day has alleged the final elements, that is, whether O'Day has suffered an otherwise adverse employment decision as a result of discrimination. (Doc. 13, at 7-11).

---

[2] O'Day does not appear to assert nor allege facts supporting a disparate-impact claim in this case.

At the onset, the Court finds that O'Day has established the first two elements of an ADA and PHRA disability discrimination and retaliation claims. According to the amended complaint, O'Day suffers from arthritis, which necessitated total knee replacement surgery on February 17, 2020, and which caused O'Day significant pain and discomfort and impaired his mobility. (Doc. 10, ¶¶ 16-17). The School District was aware of O'Day's arthritic condition and his total knee replacement surgery. (Doc. 10, ¶ 19). After his surgery, O'Day requested accommodations, including frequent rest breaks and restriction to light duty until further notice. (Doc. 10, ¶¶ 27-29; Doc. 10, at 27). With these accommodations, O'Day was able to perform his duties. (Doc. 10, ¶ 42). Taking these allegations as true, the Court is satisfied that O'Day adequately alleges that he is disabled within the meaning of the ADA and that he was able to perform the essential functions of her job.

The Court must now determine whether O'Day has sufficiently pled that he suffered an adverse employment action as a result of his disability. The Supreme Court of the United States defines an adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits . . . . A tangible employment action in most cases inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (defining an adverse employment action as "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.") (citations and internal quotation marks omitted).

Here, O'Day alleges that he was effectively terminated under a theory of constructive discharge. (Doc. 10, ¶ 71). The Supreme Court classifies a constructive discharge as an

- 8 -

adverse employment action. *Pa. State Police v. Suders*, 542 U.S. 129, 143 (2004). A constructive discharge occurs when an "employer knowingly [permits] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984). Moreover, the Third Circuit employs an "objective test and thus an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citation omitted). Factors considered when assessing a claim of constructive discharge include "whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Mandel*, 706 F.3d at 170 (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010) (emphasis added)).

The Third Circuit also explained that "[m]inor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions." *Langley v. Merck & Co.*, 186 F. App'x 258, 260 (3d Cir. 2006). The Supreme Court, however, stated that "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (citation omitted) (internal quotation marks omitted).

A plaintiff may demonstrate that his employer engaged in "[d]isparate treatment discrimination . . . by either using direct evidence of intent to discriminate or using indirect evidence from which a court could infer intent to discriminate." *Doe v. C.A.R.S. Prot. Plus, Inc.*,

527 F.3d 358, 364 (3d Cir. 2008). The court will consider evidence as "direct" when the evidence is " 'so revealing of [discriminatory] animus that it is unnecessary to rely on the [*McDonnell Douglas*] burden-shifting framework, under which the burden of proof remains with the plaintiff.' " *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (quoting *Walden v. Georgia–Pacific Corp.*, 126 F.3d 506, 512 (3d Cir. 1997)).

In assessing the merits of O'Day's allegation of constructive discharge, the court remains mindful that "subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge." *Mandel*, 706 F.3d at 169. Here, O'Day alleges that the following actions were adverse employment actions: (1) Serafini directed O'Day's supervisor to change his job duties to include cleaning the second floor of the Kistler building; (2) O'Day requested the accommodation of a transfer to another facility in a letter dated September 17, 2020, which the School District never responded to; (3) the School District's letter dated September 23, 2020, notified O'Day that a due process hearing would be held for consideration of his possible discipline, up to, and including, termination; and (4) after the School District terminated his healthcare insurance "[t]he only way by which [O'Day] could maintain his health insurance coverage was to retire from his employment, by which his health insurance coverage would be continued per Article X of the collective bargaining agreement." (Doc. 10, ¶¶ 33, 43, 50, 70).

The Court finds that, taken as a whole, O'Day has pled sufficient facts to alleged constructive discharge, which constitutes adverse employment action, required for both discrimination and retaliation claims under the ADA and PHRA. The School District argues that O'Day does not establish adverse employment action or constructive discharge because there is no allegation that he was demoted, his pay or benefits were reduced, he was

involuntarily transferred to a less desirable position, or he received unsatisfactory job evaluations. (Doc. 13, at 8). In addition, the School District claims that O'Day's request to transfer in conjunction with the additional duties "hardly alleges conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign."[3] (Doc. 13, at 8). However, whether such an increase in duty responsibilities and unanswered request to transfer constitutes an adverse employment action must be determined from the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 71 (citation omitted) (internal quotation marks omitted). Looking at the factors considered under *Colwell*, 602 F.3d at 502, there is evidence stated in the amended complaint to suggest that the School District threatened to discharge O'Day, subjected him to a termination of healthcare insurance benefits, and subjected him to altered job responsibilities. Therefore, the Court finds it plausible, at least for the purposes of a motion to dismiss, that a "reasonable person subject to [these conditions] would resign[.]" *Goss*, 747 F.2d at 888. Thus, O'Day sufficiently states a claim for constructive discharge.

---

[3] The School District also argues that Counts I and II of the amended complaint should be dismissed because O'Day's resignation did not occur under circumstances that would infer unlawful discrimination and O'Day has not alleged facts that show there was a similarly situated non-disabled employee who was treated more favorably. (Doc. 13, at 9). "The Third Circuit has 'assume[d], without deciding, that identifying these non-disabled individuals as similarly situated . . . is sufficient to satisfy the fourth prong of [plaintiffs'] prima facie ADA case.'" *Frazier v. Pennsylvania State Univ.*, No. 4:21-CV-00350, 2022 WL 1570477, at *7 (M.D. Pa. May 18, 2022) (quoting *Fowler v. AT&T, Inc.*, 19 F.4th 292, 301 (3d Cir. 2021). "But the Third Circuit has not held that identifying such similarly-situated individuals is *necessary* to allege the fourth prong, causation." *Frazier*, 2022 WL 1570477, at *7. Thus, O'Day's failure to identify similarly-situated employees whom the School District treated more favorable does not vitiate his ADA and PHRA discrimination claims at this stage.

Viewing the allegations in O'Day's amended complaint as true, the Court finds that O'Day has sufficiently pled an adverse employment action as required for both discrimination and retaliation claims under Title VII and PHRA. Accordingly, the School District's motion to dismiss is denied as to the claims of disability discrimination and retaliation under the ADA and PHRA.

B.   O'Day sufficiently pled failure-to-accommodate claims.

In Counts V and VI of the amended complaint, O'Day alleges violations of the ADA and PHRA for failure to accommodate his requests for reasonable accommodation for his disabilities. (Doc. 10, ¶¶ 93-96). Again, because local and state employment discrimination law tracks federal employment discrimination law, the Court confines its failure to accommodate analysis to the ADA. *See McCarty v. Marple Twp. Ambulance Corps,* 869 F. Supp. 2d 638, 643 (E.D. Pa. 2012).

An employer violates the ADA when it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[4] 42 U.S.C. § 12112(b)(5)(A). To plead a *prima facie* claim of failure to accommodate, a plaintiff must allege that "(1) he was disabled and h[er] employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith

---

[4] While the Court does not address this claim in terms of "discrimination," failing to "mak[e] reasonable accommodations" is statutorily defined as discriminatory conduct. However, unlike other discrimination claims, "failure to accommodate claims 'do not require that an employer's action be motivated by a discriminatory animus directed at the disability and, therefore, the *McDonnell Douglas* [burden-shifting] test does not apply.' " *Reyer v. Saint Francis Country House,* 243 F.Supp.3d 573, 595 (E.D. Pa. 2017) (quoting *Sharbaugh v. W. Haven Manor, LP,* No. CV 14-1723, 2016 WL 6834613, at *7 (W.D. Pa. Nov. 21, 2016)).

effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob.*, LLC, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). "Reasonable accommodations" are defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The applicable regulations further provide that:

> [t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3).

The Court finds that O'Day has adequately pleaded of his failure to accommodate based on disability claims, and it would therefore be premature to dismiss the claims at this time. O'Day has adequately alleged that he was disabled and that the School District knew about it, the first element of a failure to accommodate claim. (Doc. 10, ¶¶ 16-22, 38, 43). O'Day has moreover alleged that he requested accommodations for his disability, including frequent rest breaks, a restriction to light duty responsibilities, and transfer to another facility. (Doc. 10, ¶¶ 27-29, 43). Lastly, O'Day pleads that the School District did not make a good faith effort to assist his accommodation requests and that he could have been reasonably accommodated. (Doc. 10, ¶¶ 47-48, 71, 74-75).

Moving to dismiss Counts V and VI, the School District argues that O'Day's failure to accommodate claim fails because his reasonable accommodation requests were provided. (Doc. 13, at 11). The School District asserts that "[a]n inquiry as to whether his physical state

has improved is not unreasonable and does not amount to a failure to provide a request or a failure to engage in the interactive process." (Doc. 13, at 11-12). "However, whether a requested modification would work a fundamental alteration requires a fact intensive inquiry." *Frazier v. Pennsylvania State Univ.*, No. 4:21-CV-00350, 2022 WL 1570477, at *8 n.121 (M.D. Pa. May 18, 2022) (quoting *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 458 (E.D. Pa. 2014)). "[I]t is usually inappropriate to resolve the issue on a motion to dismiss." *Frazier*, 2022 WL 1570477, at *8 n.122 (quoting *Hershman*, 17 F. Supp. 3d at 458). Therefore, the Court finds that these assertions are appropriately brought forward by way of a motion for summary judgment, or at trial, as part of a factual record that has been developed through discovery.

Accordingly, the School District's motion to dismiss is denied as to O'Day's failure-to-accommodate claims.

IV. **CONCLUSION**

For the foregoing reasons, the School District's motion to dismiss (Doc. 12) is **DENIED**.

An appropriate Order follows.

Dated: June 30, 2023                     s/ Karoline Mehalchick
                                         **KAROLINE MEHALCHICK**
                                         **Chief United States Magistrate Judge**